IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK GERARD CARSON, *UNITED STATES OF AMERICA EX REL.* | : : : | CIVIL ACTION |
| v. | : : | |
| SELECT REHABILITATION, INC., CARE PAVILION NURSING AND REHABILITATION CENTER and MID-ATLANTIC HEALTHCARE, LLC, | : : : : | NO. 15-5708 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                                             **February 6, 2024**

After we dismissed his claims under the False Claims Act ("FCA") against defendants Care Pavilion Nursing and Rehabilitation Center ("Care Pavilion") and Mid-Atlantic Healthcare, LLC ("Mid-Atlantic"), and the FCA conspiracy cause of action against Select Rehabilitation, Inc. ("Select"),[1] Relator Patrick Gerard Carson filed an Amended Complaint. The defendants have moved to dismiss the same counts in the Amended Complaint that had been dismissed. Because the new allegations in the Amended

---

[1] Carson brought this *qui tam* action against Select and skilled nursing facilities and their owners. Compl. ¶¶ 13–22, ECF No. 1 ["Compl."]. When we ruled on the motions to dismiss the Complaint, five defendants remained—Select, Care Pavilion, Mid-Atlantic, Wesley Enhanced Living Main Line Rehabilitation & Skilled Nursing ("Wesley Rehab"), and Wesley Enhanced Living ("Wesley"). Saunders House was dismissed pursuant to a settlement agreement. Joint Stipulation & Written Consent of Dismissal ¶ 1, Aug. 8, 2022, ECF No. 44. Carson voluntarily dismissed Bryn Mawr Terrace and Main Line Senior Care Alliance with the Government's consent. *Id.* ¶¶ 6–11.

We dismissed four of the FCA claims and all state law claims with prejudice. Mem. Op. 32–35, 38–39, Aug. 18, 2023, ECF No. 98 ["Mem. Op."]. We granted Carson leave to amend his conspiracy claim under the FCA, 29 U.S.C. § 3729(a)(1)(C), against all defendants and his claims under the FCA, 29 U.S.C. § 3729(a)(1)(A) and (B), against Care Pavilion, Mid-Atlantic, Wesley Rehab, and Wesley. *Id.* at 39. Carson's Amended Complaint asserts claims under Section 3729(a)(1)(A), (B), and (C) against Select, Care Pavilion, and Mid-Atlantic, and a claim under Section 3730(h) against Select. He no longer asserts claims against Wesley Rehab or Wesley.

Complaint do not cure the deficiencies of the original Complaint, we shall grant the motions to dismiss.

Carson alleges Select, a provider of rehabilitative services, and Care Pavilion and Mid-Atlantic, a skilled nursing facility and its owner, participated in a scheme to submit false and fraudulent claims to Medicare and Medicaid for reimbursement for therapy.[2] As alleged, the defendants billed for therapy that was not provided, time for skilled therapy that was non-skilled, and therapy that was medically unreasonable, unnecessary, and harmful. Finding Carson had alleged sufficient particular facts showing that Select had known that what it was doing in falsifying therapy records to increase reimbursement was fraudulent, we denied Select's motion to dismiss the substantive counts asserting causes of action under Section 3729(a)(1)(A) and (B).[3] With respect to the Section 3729(a)(1)(A) and (B) claims against Care Pavilion and Mid-Atlantic, we concluded that Carson failed to allege facts showing that they knew the records and the bills submitted based on those records were false.[4]

With respect to the conspiracy claim, we concluded that because Care Pavilion and Mid-Atlantic did not know the therapy records that Select submitted were false, there could be no agreement to defraud.[5] To establish a conspiracy, Carson had to allege that they had to have known that the bills based on Select's records submitted to Medicare and Medicaid for reimbursement were false. He did not. Accordingly, we granted Care

---

[2] The fraudulent scheme is more fully described in our August 18, 2023 Memorandum Opinion. *See* Mem. Op. 4–9. Here, we summarize the scheme only to the extent necessary to understand the issues raised in the pending motions to dismiss the Amended Complaint.

[3] *Id.* at 29.

[4] *Id.* at 29–30.

[5] *Id.* at 32.

Pavilion and Mid-Atlantic's motion to dismiss all claims against them and Select's motion to dismiss the conspiracy claim under Section 3729(a)(1)(C).[6] We permitted Carson to amend his complaint.

In an attempt to overcome the deficiencies of the Complaint, Carson has modified one paragraph and added two in his Amended Complaint.[7] They are:

> 104. On one occasion, a Registered Nurse Assessment Coordinator ("RNAC") employed by Care Pavilion, reported to Relator that an administrator at Mid-Atlantic wanted to "treat the residents for a shorter length of time, say 7 days and then discharge them and pick up new residents" to increase the facility's CMI.
>
> 105. A few days later, the RNAC congratulated the therapy staff members for increasing the facility's CMI but noted that the Mid-Atlantic administrator was still not satisfied. In order to continue increasing the facility's CMI, Select Rehab assigned at least two therapists to evaluate additional patients over the weekend.
>
> 106. This shows that Care Pavilion, Mid-Atlantic and Select Rehab worked together, in coordination, to increase the facility's CMI for financial reasons rather than treating patients for legitimate medical reasons.[8]

In his original Complaint, Carson alleged the statement about manipulating therapy sessions to increase the case mix index ("CMI") "was once reported to" him by an unidentified individual.[9] In paragraph 104 of the Amended Complaint, he attributes the

---

[6] *Id.* at 30, 32.

[7] Am. Compl., ECF No. 113 ["Am. Compl."]. Other changes to the Amended Complaint include minor typographical edits and the deletion of causes of action and defendants that are no longer in the case.

[8] *Id.* ¶¶ 104–06.

[9] Compl. ¶ 110.

statement to "a Registered Nurse Assessment Coordinator ("RNAC") employed by Care Pavilion," without naming that person.[10]

The new allegations in paragraphs 105 and 106 do not aver facts showing that Care Pavilion and Mid-Atlantic knew that the therapy records were false and that they knew that the bills they submitted were fraudulent. At most, they describe how the defendants sought to increase revenue by increasing the CMI. They do not show that they falsified records to accomplish that goal.

CMI is used to determine reimbursement rates for Medicare and Medicaid services.[11] It refers to a facility's distribution of patients across resource utilization group ("RUG") levels.[12] An increased CMI reflects a higher number of patients at higher RUG levels, increasing reimbursement rates.[13]

Carson does not detail how Care Pavilion was using fraudulent records to inflate CMI. He argues in his briefing that the defendants conspired to raise RUG levels by admitting new patients and "selectively discharging patients early to increase the facility's case mix index."[14]

---

[10] Am. Compl. ¶ 104.

[11] *See* Relator Patrick Gerard Carson's Opp'n to Def. Mid-Atlantic Healthcare, LLC and Care Pavilion Nursing and Rehab. Ctr.'s Mot. to Dismiss the Am. Compl. n.2, ECF No. 119 ["Carson's Resp. to Mid-Atlantic and Care Pavilion"]; Relator Patrick Gerard Carson's Opp'n to Def. Select Rehab.'s Mot. to Dismiss the Am. Compl. n.2, ECF No. 120 ["Carson's Resp. to Select"]. "CMI" is not defined in the Amended Complaint.

[12] Select Rehab. LLC's Mem. of L. in Supp. of Mot. to Dismiss the Am. Compl. n.9, ECF No. 115 ["Select's Br."]; Carson's Resp. to Mid-Atlantic and Care Pavilion n.2; Carson's Resp. to Select n.2.

[13] Select's Br. n.9. RUG levels and how they bear on reimbursement rates are explained in our Memorandum Opinion. *See* Mem. Op. 5.

[14] Carson's Resp. to Select 7; *see also* Carson's Resp. to Mid-Atlantic and Care Pavilion 5–6.

The allegations at paragraphs 104 and 105 of the Amended Complaint demonstrate only that Care Pavilion and Mid-Atlantic sought to increase revenue by increasing the facility's CMI. Paragraph 106 contains no factual allegations. It concludes that these allegations demonstrate Care Pavilion, Mid-Atlantic, and Select coordinated to increase CMI without regard for patient need. The new allegations do not supply facts showing that Care Pavilion and Mid-Atlantic knew Select's methods of increasing CMI involved the falsification of therapy records.

As we previously explained, "[t]hat the [skilled nursing facilities] shared in the revenue does not supply the knowledge link."[15] Nor does a desire to increase revenue.

Carson argues that the added details in the Amended Complaint show that "Care Pavilion was engaged in a coordinated effort with Select to increase the facility's CMI by improperly manipulating therapy, therapy reports, and discharge decisions."[16] He is wrong. The new allegations do not show that Care Pavilion or Mid-Atlantic participated in falsifying therapy records or knew that the records were false. Nor do they suggest so.

The gravamen of Carson's claim is that the defendants falsely billed for therapy that was not provided or was unreasonable, unnecessary and harmful.[17] The new allegations present a contrary picture. They show that Care Pavilion wanted to increase therapy staff to provide a quicker turnaround of patients. There is no suggestion that Care Pavilion worked with Select to provide unnecessary therapy or to bill for therapy that was not provided. If anything, it shows patients were being discharged earlier without

---

[15] Mem. Op. 29.

[16] Carson's Resp. to Mid-Atlantic and Care Pavilion 13; Carson's Resp. to Select 7.

[17] Am. Compl. ¶¶ 52, 102.

getting the therapy they needed.  There are no facts alleged showing that Care Pavilion knew that therapy records were false.

Carson still has not alleged facts, which if proven, would show that Care Pavilion and Mid-Atlantic knew the therapy records were false or that they knowingly submitted false claims to Medicare and Medicaid.  Therefore, Carson has not stated causes of action under Section 3729(a)(1)(A) and (B) against Care Pavilion and Mid-Atlantic or under Section 3729(a)(1)(C) against all defendants.